**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3532
_____

JAMAAR A. BLAKEY,
                                        Appellant
v.

CITY OF PITTSBURGH POLICE DEPARTMENT; SGT. ANTHONY VISCOMI;
SGT. KEVIN WILSON; CMDR. THOMAS STRANGRECKI
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 08-cv-01332)
District Judge:  Honorable Donetta Ambrose
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 1, 2011
Before:  FUENTES, GREENAWAY, JR. AND GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  August 3, 2011)
_____

OPINION
_____

PER CURIAM

    Jamaar A. Blakey appeals pro se from the District Court's dismissal of his civil

rights action brought pursuant to 42 U.S.C. § 1983.  For the reasons that follow, we will

affirm.

1

In the early morning hours of October 29, 2006, two Pittsburgh police officers, Sgts. Anthony Viscomi and Kevin Wilson, observed Blakey driving at a high rate of speed. The officers followed the car, which ran several stop signs before crashing into a fence and coming to a stop. Blakey claims that he emerged from the car holding a gun and began to flee on foot, at which point Sergeant Viscomi shot him in the back and the back of the head. He was charged with various state law offenses, including aggravated assault, recklessly endangering another person, and eluding police. Ultimately, the state charges were dropped in favor of a federal prosecution for possession of a weapon by a convicted felon. Blakey pleaded guilty and was sentenced to 180 months of imprisonment.

While incarcerated, Blakey filed a civil rights action in the United States District Court for the Western District of Pennsylvania, alleging, among other things, that Sgt. Viscomi used excessive force and that the City of Pittsburgh failed to meaningfully investigate the shooting. In response, Sgt. Viscomi filed a "Suggestion of Bankruptcy," stating that he had filed a voluntary Chapter 7 bankruptcy petition, and that "[a]ll proceedings against [him] are stayed pursuant to 11 U.S.C. § 362." Later, the defendants filed a motion for summary judgment, which Blakey opposed. A Magistrate Judge recommended granting the motion in favor of the City of Pittsburgh on the ground that Blakey "has presented nothing beyond his assertion that the investigation in this case was inadequate." As to Sgt. Viscomi, however, the Magistrate Judge concluded that summary judgment was inappropriate because "other than [Blakey's] visible possession of a

2

weapon and flight, there is no indication in the record that [he] posed a threat to anyone when [Sgt.] Viscomi made the decision to shoot." Over Sgt. Viscomi's objections, the District Court, by order entered March 25, 2010, granted the motion for summary judgment in part and denied it in part. The parties filed their pretrial statements and a settlement conference was scheduled for July 21, 2010. Two days before that date, however, the District Court dismissed the case with prejudice, noting that "the sole remaining claim against Sgt. Anthony Viscomi was discharged by operation of the Bankruptcy case filed on behalf of Sgt. Viscomi on August 4, 2009 by the Honorable Bruce McCullough, U.S. Bankruptcy Judge." Blakey asked the District Court to reconsider the dismissal, arguing that the bankruptcy "only protects Sgt. Viscomi as an individual," not to the extent that he was sued in his official capacity. The District Court denied Blakey's request, holding that the claim against Sgt. Viscomi in his official capacity, which was treated as a claim against the City itself, had already been dismissed. Blakey appealed.[1]

Blakey raises two issues on appeal. First, he claims that the District Court erred in concluding that any liability of Sgt. Viscomi arising from the shooting was discharged in bankruptcy. When a debtor files under Chapter 7 of the Bankruptcy Code, the debtor is generally granted a discharge from all debts arising prior to the filing of the bankruptcy

---

[1] We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over an order granting a motion for summary judgment. <u>Gallo v. City of Philadelphia</u>, 161 F.3d 217, 221 (3d Cir. 1998).

petition. 11 U.S.C. § 727(b). Certain categories of debts, however, are excepted from discharge under 11 U.S.C. § 523(a). The Bankruptcy Rules provide that any creditor may file a complaint with the court to obtain a determination of the dischargeability of any debt. Fed. R. Bankr. P. 4007(a). Here, Blakey filed in the Bankruptcy Court an objection to the proposed discharge of his claims against Sgt. Viscomi. Sgt. Viscomi filed a motion to dismiss the objection. The Bankruptcy Court granted the motion to dismiss and closed the adversary proceeding. Blakey did not file a notice of appeal. See In re Professional Ins. Mgmt., 285 F.3d 268, 281 (3d Cir. 2002) (stating that "[a] bankruptcy court order ending a separate adversary proceeding is appealable as a final order even though that order does not conclude the entire bankruptcy case."). Although Blakey now asks us to "review the Bankruptcy Court's decision" on the ground that Sgt. Viscomi's petition was filed in bad faith, we cannot do so. Cf. In re Haugen, 998 F.2d 1442, 1447-48 (8th Cir. 1993) (stating that "[b]ecause [the creditor] failed to appeal from the adversary judgment, we believe [the creditor] must be bound by that judgment's plain terms"); see also In re Caterbone, 640 F.3d 108, 113 (3d Cir. 2011) (holding that "the time requirement for filing a bankruptcy appeal is jurisdictional").

Blakey also argues that the District Court erred in dismissing his claims against the City of Pittsburgh. In order for the City to be liable, Blakey would have to show that it had an established policy or custom that resulted in the alleged constitutional violations at issue. See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its

4

policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011). When the policy concerns an alleged failure to train subordinate officers, liability will lie only where a constitutional violation results from deliberate indifference to the constitutional rights of persons with whom the officer comes into contact. Grazier v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003). We have held that the deliberate indifference standard can apply to allegations of failure to investigate charges that constitutional rights were being violated. Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995).

Blakey claimed that the investigation into the shooting was inadequate, emphasizing that the police never asked him for his version of the incident. This allegation, however, is insufficient to sustain a cause of action against the City. Id. (holding that "vague assertions" about a police department's "failure to investigate other wrongdoings" plus reference to "the incident in this case" were not sufficient to establish a municipal policy or custom giving rise to § 1983 liability). To demonstrate that the alleged failure to investigate was caused by an existing policy, Blakey points to 18 Pa. C.S.A. § 508(a)(1), which describes the circumstances in which a police officer may use deadly force to effectuate an arrest.[2] But whether Sgt. Vicomi was justified in using

_____

[2] Specifically, § 508(a)(1) provides, in relevant part, that a police officer is justified in using deadly force when he believes that "such force is necessary to prevent the arrest from being defeated by resistance or escape; and . . . the person to be arrested has committed or attempted a forcible felony or is attempting to escape and possesses a deadly weapon, or otherwise indicates that he will endanger human life or inflict serious bodily injury unless arrested without delay."

5

deadly force under § 508(a)(1) involves separate considerations from whether the City of Pittsburgh exhibited deliberate indifference by failing to adequately investigate the shooting. Notably, there is no evidence to support Blakey's assertion that the "investigation ceased" because the City concluded that the shooting was justified under § 508(a)(1). Under these circumstances, we conclude that the District Court properly granted summary judgment in favor of the City of Pittsburgh.

For the foregoing reasons, we will affirm the judgment of the District Court.[3]

---

[3] Blakey's motion to introduce documents is granted.