RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0341p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

IN RE: LATASHA TENNIAL,

                                    *Debtor.*

──────────────────────────────────────

LATASHA TENNIAL,

                                    *Appellant*,

        *v.*

REI NATION, LLC,

                                    *Appellee.*

> No. 20-5358

Appeal from the United States District Court for the Western District of Tennessee at Memphis;
2:19-cv-02688—John Thomas Fowlkes, Jr., District Judge.

United States Bankruptcy Court for the Western District of Tennessee at Memphis;
Nos. 2:18-bk-28470—Jennie D. Latta, Judge.

Decided and Filed:  October 28, 2020

Before:  SUTTON, COOK, and WHITE, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Russell W. Savory, BEARD & SAVORY, PLLC, Memphis, Tennessee, for Appellee.  LaTasha Tennial, Memphis, Tennessee, pro se.

─────────────────

## OPINION

─────────────────

SUTTON, Circuit Judge.  LaTasha Tennial appealed a ruling in her bankruptcy case after the deadline for doing so had passed.  The district court dismissed the appeal for lack of subject

matter jurisdiction. The deadline does not create a limitation on our subject matter jurisdiction. But we agree that Tennial missed the deadline and that the deadline is mandatory. We therefore affirm the dismissal on this independent ground.

After Tennial's mortgage company foreclosed on her home, she filed a Chapter 13 bankruptcy petition. Her petition triggered an automatic stay of any further action against her home, allowing her to continue living there. 11 U.S.C. § 362. But the next year, REI Nation bought Tennial's home from the mortgage company and moved the bankruptcy court to end the automatic stay. The bankruptcy court terminated the stay in an order entered on September 12, 2019. Tennial's attorney received electronic notice of the order the same day, and the court mailed a copy to Tennial by first class mail on September 14.

Under Rule 8002(a)(1) of the Federal Rules of Bankruptcy Procedure, Tennial had 14 days—through September 26, 2019—to appeal the bankruptcy court's order to district court. Tennial didn't file her notice of appeal until October 9, 2019. At the bottom of her notice, she wrote, "I am filing this notice of Appeal after the allowed time because I did not receive a copy of the order until September 26, 2019, via U.S. Postal Service." R.1-1 at 2.

REI asked the district court to dismiss Tennial's appeal as untimely. The court granted REI's motion, concluding that it lacked jurisdiction to review the order because Tennial waited too long to file the appeal. The appeal deadline could not be extended, the court added, because Tennial failed to move for an extension under Bankruptcy Rule 8002(d). Tennial appealed to this court.

A threshold question is whether the bankruptcy appeal deadline imposes a jurisdictional requirement. Rule 8002(a)(1) requires that "a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." Fed. R. Bankr. P. 8002(a)(1). The relevant federal statute, 28 U.S.C. § 158(c)(2), provides that bankruptcy appeals "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules."

We have treated this deadline as jurisdictional before, first in *In re Dick*, 187 F.3d 635 (6th Cir. 1999), then in an unpublished decision in *Schwab Industries, Inc. v. Huntington National Bank*, 679 F. App'x 397 (6th Cir. 2017). But we have yet to look at the question in the light cast by the Supreme Court's recent guidance about jurisdictional requirements.

As we see it, the 14-day deadline created by Bankruptcy Rule 8002(a)(1) does not create a jurisdictional limit on the federal courts.

*First*, the Supreme Court has been rigorous and vigorous in distinguishing between requirements that go to the subject matter jurisdiction of the federal courts and requirements that are merely mandatory. To the end of simplifying and clarifying the issue, Justice Ginsburg wrote a trailblazing unanimous decision for the Court that created a clear-statement rule for the daunting array of settings in which the question arises. Congress must "clearly state[]" that the requirement implicates the judiciary's subject matter jurisdiction—its "statutory or constitutional *power* to adjudicate the case"—before the federal courts will treat the requirement as a non-waivable and non-forfeitable jurisdictional imperative. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). The goal, the Court said, is to rein in the "profligate" and imprecise use of "jurisdiction." *Arbaugh*, 546 U.S. at 510. Consistent with that goal and consistent with the clear-statement rule, the Court has treated most of the procedural requirements that have come before it since then as *not* being jurisdictional in the constitutional sense of the term. *See, e.g.*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015); *Musacchio v. United States*, 136 S. Ct. 709 (2016).

That does not seem like a hard principle to apply here. Congress did not state that this 14-day deadline establishes a jurisdictional prerequisite. In the relevant statute, Congress merely referred to any appeal deadlines created by the Bankruptcy Rules. 28 U.S.C. § 158(c)(2). Nothing about that reference indicates that Congress meant to attach subject matter jurisdiction consequences to deadlines established by the Bankruptcy Rules. Much less did it do so "clearly" with that modest reference.

*Second*, and more concretely, the Court has handled four cases involving rule-based deadlines in recent years, and each of them suggests that the Bankruptcy Rule's 14-day appeal deadline is not jurisdictional. Here are the rules at issue in each case:

* the 60-day deadline for a creditor to object to its debtor's discharge under Bankruptcy Rules 4004(a) and (b) and 9006(b)(3), *Kontrick v. Ryan*, 540 U.S. 443 (2004);

* the 7-day deadline to move for a new trial on grounds other than newly discovered evidence under Criminal Rules 33 and 45(b)(2), *Eberhart v. United States*, 546 U.S. 12 (2005) (per curiam);

* the 14-day time limit for extending the civil appeal deadline if the losing party does not receive notice of the decision under Appellate Rule 4(a)(6), *Bowles v. Russell*, 551 U.S. 205 (2007); and

* the 30-day time limit for extending the civil appeal deadline if the losing party receives notice of the appealable judgment under Appellate Rule 4(a)(5)(C), *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13 (2017).

How did the Court resolve these cases? Based on this straightforward principle: Rule-based deadlines are jurisdictional when they implement an appeal deadline created by Congress. Otherwise, they are not. Thus: A bankruptcy appellate deadline is not jurisdictional when Congress did not create it. *Kontrick*, 540 U.S. at 448, 453–54. A criminal procedure deadline to move for a new trial is not jurisdictional when Congress did not create it. *Eberhart*, 546 U.S. at 13, 15–19. A civil appellate deadline is not jurisdictional when Congress did not "set[] the time." *Hamer*, 138 S. Ct. at 17. But a civil appellate deadline is jurisdictional when the rule creates a "specific[]" appeal deadline that is "set forth in a statute." *Bowles*, 551 U.S. at 213, 210. The answer to how to characterize each rule-based deadline comes down to this: "If a time prescription governing the transfer of adjudicatory authority [to an] Article III court . . . appears in a statute, the limitation is jurisdictional; otherwise, the time specification fits within the claim-processing category." *Hamer*, 138 S. Ct. at 20 (quotation omitted).

Under this straightforward principle, Bankruptcy Rule 8002(a)(1)'s appeal deadline falls on the nonjurisdictional side of the line. It does not implement an appeal deadline set by Congress. At no place in 28 U.S.C. § 158(c)(2) does Congress create an appeal deadline for these appeals, whether 10 days, 14 days, or 30 days. It merely references the deadline created by the Advisory Committee on Bankruptcy Rules and the Standing Committee on Rules of Practice and Procedure under the Rules Enabling Act. 28 U.S.C. §§ 2071–77. If deadlines established by the rules process alone created jurisdictional limits, *Kontrick*, *Eberhart*, and *Hamer* would have come out differently. And *Bowles* would not have wasted its breath in talking about how that rule-based deadline implemented a statutory requirement.

No less significantly, if deadlines established by the rules process alone created jurisdictional limits, that would mean the rules committee could change the scope of federal court subject matter jurisdiction on its own. That's good work if you can get it, to be sure. But the Constitution gives that power to Congress alone. *See* U.S. Const. art. III, § 1; *see also Kontrick*, 540 U.S. at 452. Nor is this possibility a mere product of a fevered imagination. The rules committees, as it happens, have changed the bankruptcy appeal deadline since 28 U.S.C. § 158 was enacted—from 10 to 14 days. *See* Fed. R. Bankr. P. 8002 advisory committee's note to 2009 amendment. How, then, can we say that Congress "specifi[ed]" a deadline that the rules committee has changed on its own with no input from the National Legislature? *Bowles*, 551 U.S. at 213. We have no answer.

All of the intermediate appellate authority on the issue, we must acknowledge, runs in the other direction over the last ten years. The cases uniformly conclude that the Bankruptcy Rule's 14-day deadline creates a jurisdictional threshold. *See, e.g.*, *In re Caterbone*, 640 F.3d 108 (3rd Cir. 2011); *In re Berman-Smith*, 737 F.3d 997 (5th Cir. 2013) (per curiam); *In re Sobczak-Slomczewski*, 826 F.3d 429 (7th Cir. 2016) (per curiam); *In re Latture*, 605 F.3d 830 (10th Cir. 2010). While the contrary arguments embraced by our sister circuits offer plenty of food for thought, we do not think they hold up.

Some courts note that the 14-day bankruptcy appeal deadline is akin to the civil appeal deadline in Appellate Rule 4(a)(6) that *Bowles* treated as jurisdictional. In support, they point out that the Advisory Committee on Bankruptcy Rules stated that Rule 8002 "is an adaptation of

Fed. R.App. P. 4(a)," the Rule addressed in *Bowles*. *In re Berman-Smith*, 737 F.3d at 1002 (quotation omitted); *see also In re Latture*, 605 F.3d at 837; *In re Caterbone*, 640 F.3d at 113. But *Hamer* also addressed an appeal deadline from Appellate Rule 4(a), namely Rule 4(a)(5)(C). And it refused to treat that deadline as jurisdictional. Why? Because it did not implement a statutory deadline in the same way that Appellate Rule 4(a)(6), the subject of *Bowles*, implemented Congress's time limit for extending the civil appeal deadline in 28 U.S.C. § 2107. *Hamer*, 138 S. Ct. at 20–22. If different appeal deadlines within Appellate Rule 4(a) have different jurisdictional qualities, the reality that the bankruptcy appeal deadline grows out of Appellate Rule 4(a) tells us nothing.

Some courts insist that Bankruptcy Rule 8002(a)(1) enacts a deadline prescribed by Congress. By referencing "the time provided by Rule 8002," they say, § 158(c)(2) "specifies the time within which an appeal must be taken." *In re Caterbone*, 640 F.3d at 111 (quotation omitted); *see also In re Berman-Smith*, 737 F.3d at 1001–02; *In re Sobczak-Slomczewski*, 826 F.3d at 432; *In re Latture*, 605 F.3d at 837. Any effort to separate the statutory incorporation of a rule's deadline from the statutory creation of a deadline, they say, amounts to a "distinction without a difference." *In re Berman-Smith*, 737 F.3d at 1001 (quotation omitted); *In re Latture*, 605 F.3d at 836. But there is a difference—the difference indeed that explains all four of the Court's rule-deadline cases. When the rule deadline grows out of one truly "specifi[ed]" by Congress, *Bowles*, 551 U.S. at 213, it is jurisdictional. When the rule deadline grows out of the rules process alone, it is not. At least one of these cases might have come out the other way if this were a "distinction without a difference." The statute corresponding to the deadline at issue in *Eberhart* mentioned the Criminal Rule that established the deadline. 18 U.S.C. § 3446 says "See Federal Rules of Criminal Procedure" and "Granting of new trial, grounds, and motion, Rule 33." Yet no Justice in that case thought that sufficed.

There's good reason it did not suffice. It would mean that Congress could delegate authority to establish the subject matter jurisdiction of the federal courts to the rules committees through the Rules Enabling Act of 1934. That would come as a surprise. "Only Congress," it's long been thought, "may determine a lower federal court's subject-matter jurisdiction," making it

"axiomatic that such rules do not create or withdraw federal jurisdiction." *Kontrick*, 540 U.S. at 452–53 (quotation omitted).

But, these courts insist, *Bowles* already crossed that line when it said that, "[i]f rigorous [jurisdictional] rules like the one applied today are thought to be inequitable, Congress may authorize courts to promulgate rules that excuse compliance with the statutory time limits." *Bowles*, 551 U.S. at 214. Invoking this statement in *Bowles*, the Tenth Circuit reasoned that "[a]uthorizing courts to make exceptions to jurisdictional time limits is effectively the same as authorizing courts to set the time limit in the first instance." *In re Latture*, 605 F.3d at 837. The Fifth Circuit followed suit. *In re Berman-Smith*, 737 F.3d at 1002–03.

But the one point does not necessarily follow from the other. The statute at issue in *Bowles* was 28 U.S.C. § 2107. Subsection (c) of the statute says that a district court may "extend the time for appeal upon a showing of excusable neglect or good cause." There's nothing unusual, or non-delegable, about Congress empowering district courts to find excusable neglect with respect to a jurisdictional deadline in a given case or with Congress empowering the rules committees to promulgate a rule that defines "excusable neglect or good cause." That's simply an implementation of the statutory imperative—and often a form of permissible delegable factfinding to boot. *See, e.g.*, *Touby v. United States*, 500 U.S. 160 (1991). And it's a distant cry from delegating authority over the creation of the deadline in the first instance.

But even if Congress had such authority (doubtful), it did not clearly exercise it in this instance. Merely invoking the Bankruptcy Rule in the statute without identifying any time limit does not create a clear jurisdictional limit on the federal courts.

That leaves the concern that this bankruptcy appeal deadline has long been treated as jurisdictional, prompting fears that we would upset settled expectations if we switched gears now. *See In re Caterbone*, 640 F.3d at 112; *see also In re Latture*, 605 F.3d at 831–32; *In re Berman-Smith*, 737 F.3d at 1000. *Bowles*, it is true, relied on stare decisis considerations in continuing to treat as jurisdictional the time limits spelled out in 28 U.S.C. § 2107. 551 U.S. at 209–13. But *Arbaugh* has altered all kinds of provisions once thought to be "jurisdictional" in order to bring discipline to a word that had come to have "many, too many, meanings."

*Arbaugh*, 546 U.S. at 510 (quotation omitted). When it comes to rule-based deadlines, the Court's four cases have created an easy-to-implement benchmark: If the rule-based deadline honors a congressionally specified appeal deadline, it is jurisdictional; if not, not. *Hamer*, 138 S. Ct. at 20. Any effort to unscramble that approach now will impair far more reliance interests and unsettle far more expectations than it will protect.

All in all, Bankruptcy Rule 8002(a)(1)'s 14-day time limit for filing a notice of appeal does not create a jurisdictional imperative.

Even so, the deadline remains mandatory. Bankruptcy appeals "*shall* be taken in . . . the time provided by Rule 8002 of the Bankruptcy Rules," 28 U.S.C. § 158(c)(2), and Bankruptcy Rule 8002(a)(1) provides that an appeal "*must* be filed . . . within 14 days." (Emphases added). Tennial missed the deadline, and REI invoked the deadline in its motion to dismiss. Nor does the explanation she placed on the notice of appeal excuse the dilatory filing. Her lawyer had timely notice of the district court's order. And while Tennial protests that her note should be treated as a motion for an extension of time under Bankruptcy Rule 8002(d), that same rule precludes extensions when a party appeals from an order "grant[ing] relief from an automatic stay." Fed. R. Bankr. P. 8002(d)(2)(A). That's just what we have: Tennial attempted to appeal the bankruptcy court's order granting REI relief from an automatic stay.

Because the appeal deadline is mandatory, because Tennial missed it, and because REI raised the issue in its motion to dismiss, the appeal must be dismissed as dilatory.

We affirm the dismissal on this ground.